## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **KORTNEY JETER** | : | |
| 600 Kammer Ave. | : | |
| Dayton, OH 45417 | : | |
| | : | |
| | : | **Case No.: 3:19-cv-117** |
| Plaintiff, | : | |
| | : | |
| v. | : | **Judge** |
| | : | |
| **BOTTLING GROUP, LLC** | : | **COMPLAINT** |
| CT Corporation System (Statutory Agent) | : | |
| 4400 Easton Commons Way, Suite 125 | : | |
| Columbus, OH 43219 | : | |
| | : | |
| Defendant. | : | **Jury Demand Endorsed Hereon** |
| | : | |
| | : | |

## COMPLAINT

NOW COMES Plaintiff Kortney Jeter ("Plaintiff") and proffers this Complaint for damages against Bottling Group, LLC ("Defendant").

## THE PARTIES

1.      Plaintiff is a natural person residing in Ohio.

2.      Defendant is a Corporation for profit doing business in the Northern District of Ohio.

3.      At all times relevant herein, Plaintiff was an "employee" as that term is defined under the Family and Medical Leave Act ("FMLA").

4.      At all times relevant herein, Defendant was an "employer" as defined by 29 U.S.C. § 2611(4)(A) of the FMLA.

5.      At all times relevant herein, Defendant was engaged in commerce or an industry or activity affecting commerce, and employed 50 or more employees for each working day during each of 20 or more calendar workweeks at all times during Plaintiff's employment.

6.      At all times relevant herein, Plaintiff is an "employee" as the term is defined under Ohio Revised Code 4112.

7.      At all times relevant herein, Defendant is an "employer" as defined by Ohio Revised Code 4112.

## JURISDICTION AND VENUE

8.      This action is brought pursuant to the FMLA and O.R.C. 4112.

9.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, which provides for original jurisdiction of Plaintiff's claims arising under the law of the United States.

10.      This Court has jurisdiction over Plaintiff's claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

11.      Venue is proper pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendant in the Northern District of Ohio and preformed her job duties there, and Defendant is doing and has done substantial business in the Northern District of Ohio.

## FACTUAL BACKGROUND

12.      Plaintiff began working for Defendant in August 2010.

13.      On or about April 2017, Plaintiff began working as a Key Account Manager for Defendant.

14.     On or about Friday, August 10, 2018, Plaintiff was seen by her physician, who diagnosed Plaintiff with anxiety and stress disorders.  As a consequence, Plaintiff's physician referred Plaintiff to a therapist for counseling and originally took Plaintiff off work from Monday, August 13, 2018 through September 9, 2018.

15.     After Plaintiff's appointment with her physician, Plaintiff contacted Defendant's PepsiCo Leave and Claim Center ("PLCC") to inform them of her request for medical leave.

16.     PLCC responded to Plaintiff's request for medical leave by sending FMLA paperwork to Plaintiff's physician.

17.     Plaintiff also emailed her direct supervisor, Eric Pelligrini, to inform him that her doctor had taken her off work for several weeks.  Mr. Pellegrini responded by instructing Plaintiff to, consistent with the actions she had already taken, reach out to PLCC.

18.     During the several weeks following Plaintiff's request for FMLA leave, she went to the therapist for three separate sessions.

19.     On or about September 4, 2018, Plaintiff had a follow-up appointment with her physician.  During that appointment, Plaintiff's physician decided to take Plaintiff off work through the beginning of October 2018 due to her anxiety and stress disorders.

20.     Immediately after Plaintiff's physician appointment, Plaintiff contacted PLCC to inform them that her physician was extending her FMLA leave through the beginning of October 2018.  The PLCC representative responded by indicating that PLCC would send additional paperwork for Plaintiff's physician to complete in order to extend her leave.

21.     On or about September 7, 2018, Plaintiff received a text message from the PLCC stating: "We are trying to reach you, however have been unsuccessful.  Please call Sedgwick at 855-737-2255 to avoid a possible delay in your claim decision."

22.     Plaintiff responded to the text message by immediately calling the number provided.  Plaintiff spoke to Zachary Klein at Sedgwick, who indicated that they had not been able to get a hold of her earlier because they had been using an outdated phone number.

23.     Plaintiff informed Mr. Klein during the phone call that her physician had just extended her medical leave until early October 2018.  Plaintiff asked Mr. Klein what, if anything, she had to do to extend her FMLA leave.  Mr. Klein responded by stating that they would send out new paperwork for Plaintiff's physician for the physician to complete.

24.     A few days after Plaintiff's conversation with Mr. Klein, Mr. Klein sent a letter dated September 12, 2018 to Plaintiff that stated to Plaintiff, "your leave has been certified through August 26, 2018."  In that letter, Mr. Klein also stated to Plaintiff, "[y]ou recently informed us that you will need an extension of your leave" and, "[i]n order to evaluate your continued need beyond August 26, 2018, the enclosed certification form will need to be completed and returned to Sedgwick no later than October 2, 2018."

25.     In Mr. Klein's letter, Mr. Klein further indicated to Plaintiff in the "Actions Required" section: "Return a Certification form (completed by the health care provider) no later than October 2, 2018."  Mr. Klein concluded that letter by indicating that, "**[i]f you do not return the requested certification form by October 2, 2018, your leave extension request may be denied.**"  (Emphasis in original).

26.     A few days after receiving Mr. Klein's letter, Plaintiff received a letter from Michael Halcik in Defendant's human resources department dated September 11, 2018.  In the letter, Mr. Halcik indicated that PLCC approved Plaintiff's leave from August 13, 2018 through August 26, 2018 as FMLA approved leave. However, for reasons not disclosed in the letter itself, Mr. Halcik's letter also stated that PLCC had, as of September 11, 2018, denied Plaintiff's request for leave beyond August 26, 2018.

27.     PLCC had never previously indicated that her request for leave beyond August 26, 2018 had been denied.  Mr. Halcik concluded the letter by stating that Plaintiff must "contact the PLCC to appeal your claim denial" and, "[i]f this additional period of absence is not ultimately approved, it may be subject to the attendance policy and your employment may end."

28.     Upon receiving Mr. Halcik's letter, Plaintiff contacted Sedgwick given that she was confused about Mr. Halcik's statements in the letter.  The person whom Ms. Jeter spoke with stated that, based upon what he could see in her file, Plaintiff's physician had not yet submitted documentation that extended her FMLA leave, but that her physician had until October 2, 2018 to provide the documentation.

29.     On or about September 24, 2018, Plaintiff received a letter dated September 21, 2018 that terminated her employment.  The letter indicated that Defendant was terminating Plaintiff's "employment effective 9/21/18 for Job Abandonment," claiming that she had "been out on an unapproved leave since 8/27/18."

30.     The following day, September 25, 2018, Plaintiff received a text message from Sedgwick that stated: "Sedgwick has not received certification info regarding your leave of absence.  Info must be received by October 2, 2018.".

## COUNT I
### Retaliation - Violation of the Family Medical Leave Act

31.     Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

32.     When Plaintiff requested for medical leave on or about August 10, 2018, she had worked for Defendant for more than one thousand two hundred and fifty (1,250) hours in the twelve months prior to that date and she had been employed in this role for more than twelve (12) months prior to that date.

33.     Plaintiff is an "eligible employee" as defined by 29 U.S.C. § 2611(2).

34.     Defendant employed more than 50 persons within a 75-mile radius of Plaintiff's place of employment.

35.     Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A).

36.     Plaintiff was incapacitated for more than three consecutive days because she could not perform her job duties due to her stress disorders and anxiety.

37.     Plaintiff received treatment two or more times within the first 30 days of incapacity by visiting her physician multiple times after her August 10, 2018 visit and visiting the therapist.

38.     Plaintiff's anxiety and stress disorders qualified as "serious health conditions" as defined by 29 C.F.R. § 825.113.

39.     Plaintiff suffered an adverse employment action when Defendant terminated her from her position in retaliation for requesting possible FMLA leave.

40.     Defendant violated the FMLA by retaliating against Plaintiff by terminating her from her position after she requested possible FMLA leave.

41.     Defendant lacked good faith and/or reasonable grounds to believe that it had not violated the FMLA in its discharge of Plaintiff.

42.     Defendant's violation of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

## COUNT II
### Interference - Violation of the Family Medical Leave Act

43.     Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

44.     Defendant knew or should have known that Plaintiff's request for time off work qualified for FMLA leave.

45.     Defendant interfered with Plaintiff's FMLA rights by not affording her the job-protected leave to which she was entitled.

46.     Defendant lacked good faith and/or reasonable grounds to believe they had not violated the FMLA in its discharge of Plaintiff.

47.     Defendant's violations of the FMLA entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

## COUNT III
### Discrimination/Failure to Reasonably Accommodate – O.R.C. 4112

48.     Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

7

49.     Plaintiff has been diagnosed with stress disorders and anxiety which, when active, substantially limit her ability to perform major life activities such as working, thinking, and caring for herself.  At all times relevant hereto, Plaintiff had a disability, a record of physical impairments (stress disorders and anxiety), and was regarded by Defendant has having a physical impairment as defined by O.R.C. § 4112.01(A)(13).

50.     At the time that her employment was terminated, Plaintiff could perform the essential functions of her job with or without a reasonable accommodation.

51.     Plaintiff's disability, her record of having a physical impairment, and Defendant's regard for her as having a physical impairment were determining factors in Defendant's decision to terminate Plaintiff's employment.

52.     Defendant further discriminated against Plaintiff by failing to engage with her in the "interactive process."  Plaintiff made Defendant aware of her need for assistance with her job requirements due to her medical issues, but Defendant failed to engage in the interactive process in good faith with Plaintiff to determine whether a reasonable accommodation was possible.

53.     Plaintiff, in notifying Defendant that she needed to be off work due to her stress disorders and anxiety, requested a reasonable accommodation.  This accommodation was reasonable and could have been made by Defendant without undue hardship.

54.     Defendant's conduct violated O.R.C. § 4112.02.  Defendant discriminated against Plaintiff by terminating her on the basis of her disability and in retaliation for requesting a reasonable accommodation.

55.      As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered severe emotional and psychological distress, embarrassment, humiliation, lost wages and benefits, attorneys' fees, and other economic damages in excess of $25,000.00. WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, and compensatory damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,


/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
Angela J. Gibson (0080928)
**GIBSON LAW, LLC**
9200 Montgomery, Rd., Suite 11A
Cincinnati, OH 45242
(brad@gibsonemploymentlaw.com)
(angela@gibsonemploymentlaw.com)
513-834-8254 (Phone)

*Attorneys for Plaintiff*


## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.


/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)